E-FILED
Thursday, 08 September, 2022  01:36:41 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

AMANDA JACKSON,                              )
                                             )
    Plaintiff,                           )
                                             )
VS.                                          )    Case No. 22_____
                                             )
METHODIST HEALTH SERVICES                    )
CORPORATION, d/b/a UNITYPOINT                )
HEALTH – CENTRAL ILLINOIS,                   )
                                             )
    Defendant.                           )

---

**VERIFIED COMPLAINT
FOR DECLARATORY RELIEF AND DAMAGES**

COMES NOW Plaintiff, AMANDA JACKSON, by and through her attorney, Bethany D. Hager, pursuant to Fed. Rule Civ. Proc. 81(c)(1) and Fed. Rule Civ. Proc. 15(a)(1), (2), and for her Verified Complaint for Declaratory Relief, and Damages against Defendant, METHODIST HEALTH SERVICES CORPORATION, d/b/a UNITYPOINT HEALTH – CENTRAL ILLINOIS, ("UnityPoint") alleges as follows:

**<u>PARTIES</u>**

1.    Plaintiff is an adult individual who until November 19, 2021, was employed by Defendant.

2.    Defendant is a non-profit corporation authorized, located and providing medical services in Illinois.

3.    Plaintiff has sustained substantial change to the terms of her employment, including prolonged unpaid suspension and ultimately termination of employment, solely due to not agreeing to be vaccinated for COVID-19 or submitting to COVID-19 testing.

## FACTUAL BASIS

4.      On or about September 3, 2021, Defendant Pritzker issued an Executive Order stating that individuals employed as health care professionals in Illinois would be required to receive the first shot of a two-shot vaccine for Covid-19, or one shot of a one-shot vaccine for Covid-19, by September 27, 2021, or be excluded from their places of employment. (See Exhibit A)

5.      On or about September 17, 2021, the Illinois Department of Public Health ("IDPH") issued "emergency rules," modifying the definition of "quarantine" in the Illinois Administrative Code so as to render the governor's Executive Order legally effective.

6.      The emergency rules were later found to be null and void. *See*, *Austin v. Pritzker*, Sangamon County 21-CH-500006, February 4, 2022 Decision and Order of Judge Grischow, *affirmed*, Fourth District Appellate Court No. 4-22- (February 17, 2022), *lv to appeal denied*, Illinois Supreme Court No. 128205. (See, collectively, Exhibit B)

7.      Employees, including Plaintiff, who refused to receive a Covid-19 vaccination were excluded from their places of employment and placed on unpaid leave, beginning September 27, 2021.

8.      Plaintiff sought exemption from the Covid-19 vaccination policy due to her sincerely held religious beliefs, and was notified by Defendant that her exemption was accepted. (See Exhibit C)

9.      However, Defendant later, verbally, told Plaintiff that the Executive Order did not allow for such exemption.  As such, Plaintiff was told that her request from exemption from the Covid-19 vaccination policy, though originally accepted in writing by Defendant, was denied.

10.     Plaintiff has been subjected to lay-off, reassignment, suspension without pay, and termination solely because, due to her sincere religious convictions, she did not submit to Covid-19 vaccination and testing.

11.     Regular Covid testing was not required of employees who received the Covid-19 vaccine.

12.     Plaintiff, and other employees of Defendant, were not required to vaccinate for any other infectious disease as a condition of their employment. While Illinois law provides for a mandatory influenza vaccine for healthcare workers, the same statute includes provision for religious exemption from the vaccine requirement, and places no other requirement on workers who decline the influenza vaccine for religious reasons. *See¸* 20 ILCS 2310/2310-650.

13.     The only disease for which Plaintiff, and other employers of Defendant, were required to test as a condition of their employment is tuberculosis. See, 77 Ill. Admin. Code 696.130.

14.     Plaintiff objects to being vaccinated or tested for Covid-19 as it violates her moral conscience.

15.     Plaintiff was willing to abide by protections that have been demonstrated to protect against Covid-19, namely, self-monitoring for symptoms, wearing a mask when appropriate, voluntary reporting of potential symptoms, and reasonable testing requirements. These mechanisms provide a sufficient alternative to forced vaccination in violation of sincerely held religious beliefs.

16.     Being vaccinated or asymptomatically tested for Covid-19 violates the moral conscience of Plaintiff because, *inter alia*, Plaintiff holds sincere beliefs that prevent her from submitting to health care procedures which she, a competent adult, does not believe are medically

necessary.

17.     Being vaccinated for Covid-19 violates the moral conscience of Plaintiff because, *inter alia*, Plaintiff holds sincere beliefs that prevent her from introducing hazardous substances, foreign DNA, human albumin, animal cells, and known carcinogens into her blood; and from submitting to health care procedures which she reasonably believes relied, in whole or in part, for research and development on the use of stem cells or other materials obtained from aborted fetuses.

18.     Requiring only unvaccinated persons to submit to testing for Covid-19 violates the moral conscience of Plaintiff because, *inter alia*, Plaintiff holds sincere beliefs that prevent her from submitting to or participating in workplace procedures which arbitrarily discriminate between employees on the basis of health care choices made pursuant to freedom of conscience.

19.     The vaccines available to Plaintiff, in the fall and winter of 2021, had only had emergency use authorization for less than one year.[1]

20.     In the fall and winter of 2021, the only available COVID-19 vaccines (Janssen/Johnson & Johnson), was authorized for Emergency Use under the Emergency Use Authorization statute. The Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiff, be given the right to accept or refuse administration of the product.

21.     The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[2] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[3] According to the EUA extension letter issued by

---

[1] https://www.dph.illinois.gov/covid19/vaccination-plan
[2] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.
[3] EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021),

the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's

COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[4]

22.     Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for

use until BioNTech submits "final container samples of the product in final containers together

with protocols showing results of all applicable tests" and BioNTech receives "a notification of

release from the Director, Center for Biologics Evaluation and Research (CBER)."[5] Thus, it is not

clear when (or if) any individual will have access to the "approved" COMIRNATY vaccine,

leaving all employees who may elect to receive the "Pfizer" vaccine pursuant to the mandatory

vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being

administered subject to EUA rules.

23.     On August 23, 2021, the United States Food and Drug Administration issued two

separate letters pertaining to two separate COVID-19 vaccines. (See, Exhibit D, BioNTech Letter,

United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021);

Exhibit E Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23,

2021).)

24.     In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted

Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. E,

Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020,

February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

25.     The Pfizer Letter also makes clear that there is a scientific, manufacturing, and

legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly

---

https://www.fda.gov/media/150386/download.
[4] *Id*. at 3 n.10 (emphasis added).
[5] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, supra note 2 at 2.

approved Comirnaty Vaccine. (Pfizer Letter at 2 n.9.)

26.     Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine as granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)."

27.     Put simply, because all three of the then-available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendant (or any other entity) from making the COVID-19 vaccines mandatory.

28.     All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

29.     On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

30.     In the fall and winter of 2021, there were no existing doses of COMIRNATY in the United States and it was not being manufactured for production or distribution in the United States at that time.

31.     In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY was not

available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

32.     Thus, in the fall and winter of 2021, the only then-available COVID-19 vaccines were subject solely to EUA approval.

33.     The Emergency Use Authorization Fact Sheets for all three COVID- 19 vaccines state that it is the individual's right to refuse administration of the vaccine.

34.     Pfizer has acknowledged over 1200 serious to life-threatening known side effects from its "investigational Covid-19 vaccine."[6]

35.     According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, based on reported numbers, is 98.40%.[7]

36.     According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, when adjusted for unreported cases, is 99.36%.[8]

37.     According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, based on reported number, is 98.46%.[9]

38.     According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, when adjusted for all unreported Covid cases, is 99.52%.[10]

39.     The suspension without pay, termination, discriminatory treatment, and subjection to a hostile work environment toward Plaintiff has caused incalculable and irreparable harm to Plaintiff and her family, namely, jeopardizing Plaintiffs' ability to provide for her family and avoid

---

[6] https://phmpt.org/wp-content/uploads/2021/11/5.3.6-postmarketing-experience.pdf
[7] https://covid.cdc.gov/covid-data-tracker/#datatracker-home
[8] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (this CDC report adjusts the reporting based on asymptomatic cases which never get reported to government agencies.)
[9] https://www.dph.illinois.gov/covid19/covid19-statistics
[10] https://www.dph.illinois.gov/covid19/covid19-statistics

homelessness, lack of medical care, lack of food and shelter, disrupted education for children, financial hardship or ruin, and harms to physical, mental and emotional health.

40.     Several courts in Illinois and throughout the nation have issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse employment consequences because of their religious or conscience-based objections to COVID-19 vaccines: *Doster v. Kendall*, Case No. 2021 CV 0084 (US Dist. Court, Southern District of Ohio) (preliminary injunction entered July 27, 2022); *Jane Doe et. al. v. Northshore University Health System*, Case No. 2021 CV 05683 (US Dist. Court, Northern District of Illinois) (granting TRO under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Illinois Health Care Right of Conscience Act); *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October 1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare provider from taking adverse action against healthcare employees declining COVID-19 vaccination on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions and noting that "Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation." (emphasis added)); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl*

*v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021)(allowing the preliminary injunction to stand against a University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights." (emphasis added)); *Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

41.     On or about November 8, 2021, the Illinois General Assembly enacted Public Act 102-667, Section 5 (effective June 1, 2022) adding 745 ILCS 70/13.5 to the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq ("the Amendment"). The Amendment provides,

> It is not a violation of this Act for any person or public official, or for any public or private association, agency, corporation, entity, institution, or employer, to take any measures or impose any requirements, including, but not limited to, any measures or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations. It is not a violation of this Act to enforce such measures or requirements. This Section is a declaration of existing law and shall not be construed as a new enactment. Accordingly, this Section shall apply to all actions commenced or pending on or after the effective date of this amendatory Act of the 102nd General Assembly. Nothing

in this Section is intended to affect any right or remedy under federal law. (Source: P.A. 102-667, eff. 6-1-22.)

A copy of the Healthcare Right of Conscience Act ("HCRCA") as amended by Public Act 102-667, is attached here as Exhibit F.

42.     The Amendment came into being only after several Illinois state courts had extended protection from Covid-19 vaccination or testing mandates to litigants under the original wording of the HCRCA. *See, Rojas*, 443 Ill. Dec. 212; *Darnell*, 2021 MR 193, Adams County, September 30, 2021 Decision and Order; 745 ILCS 70/13.5.

43.     Governor Pritzker stated specifically that he sought the amendment as a direct result of his dislike for the ongoing lawsuits challenging his authority to mandate Covid-19 vaccination or testing via executive order.[11]

44.     Employees of Illinois state agencies acknowledged, as early as September 2021, that they were aware their actions attempting to require individuals such as Plaintiffs to either vaccinate or test for Covid-19 in order to maintain employment, were a violation of HCRCA. *See*, Exhibit G, September 2021 email from Jeffrey Aranowski of Illinois State Board of Education ("…given the language of the Act we believe HCRCA objections are likely valid.")

45.     The HCRCA was intended to protect the religious conscience rights of individuals like Plaintiff, but the Amendment added by Public Act 102-667 strips the HCRCA of that protection.

46.     The Amendment violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*., because it violates the religious convictions of individuals including Plaintiff without serving a compelling government interest in a least restrictive way, and it treats some religious

---

[11] *https://www.thecentersquare.com/illinois/pritzker-calls-concerns-about-changes-to-right-of-conscience-act-facebook-fakery/article_97471822-377b-11ec-bf66-9febd03329d0.html?fbclid=IwAR1CbWOJO2nFe1fpE9t1rsIu1r4F2Po_2GFdwXXy7qFE0raGePZuf3pcS_w*

beliefs more favorably than others.

47.     For the same reason, the Amendment violates the protection of the free exercise of religion of the First Amendment of the United States Constitution and Article I, Section 3 of the Illinois Constitution.

48.     The Amendment further violates the equal protection rights of the Plaintiff under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Illinois Constitution, by treating similarly situated individuals differently based upon their religious beliefs.

49.     The Illinois Legislature in carrying out its constitutional duty passed the Department of Public Health Act vesting the IDPH with "supreme authority" in relation to areas of testing, vaccinations, and quarantine.  A copy of the Department of Public Health Act ("PHA") and Illinois Administrative Code is attached hereto as Exhibit H.

50.     Section 690 of Title 77 of the Illinois Administrative Code has been in existence since 1970 and all State actors and citizens have operated under those set standards despite contagious diseases such as MERS, Swine Flu, and Ebola.

51.     Pursuant to said statute and administrative code, the IDPH has explicitly delegated its authority to order testing and/or vaccinations to certified local health departments.  Neither the PHA nor the Illinois Administrative Code permit the Governor or any other State agency to implement broad public health measures through implementation of Executive Orders that impeded on the explicit due process rights set forth in the PHA.

52.     In the passing of the PHA, the Illinois Legislature made clear the IDPH's promulgated administrative rules regarding procedural safeguards must be followed when

mandating citizens of the State of Illinois vaccinate and/or test to control to spread of contagious disease.

53.     Never in the history of Illinois has the Governor, or other administrative agency, attempted to adopt such an abrasive public health regulation addressing a threat that is frankly unrelated to the workplace.  As the Supreme Court indicated, "this lack of historical precedent, coupled with the breadth of authority the Secretary now claims, is a telling indication that the mandate extends beyond the agency's legitimate reach."  *National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, Et Al.,* 595 U.S. 1, 7 (2022); citing *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 505 (2010).

54.     The United States Supreme Court, moreover, has recognized that the issue of requiring vaccination and/or testing for any particular infectious disease is a matter of public health, not of workplace safety. *National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, Et Al.,* 595 U.S. 1, 7 (2022).

55.     Plaintiff seeks declaratory relief under 28 U.S.C. §§2201-02, the First and Fourteenth Amendments of the United States Constitution, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq., Article I §§ 3 & 4 of the Illinois Constitution, and the Declaratory Judgment Act, 735 ILCS 5/2-701.

56.     Plaintiff seeks attorney's fees and costs under 42 U.S.C. § 1988, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20, and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

## JURISDICTION AND VENUE

57.      This action arises under the laws of the United States, specifically 21 U.S.C.

§360bbb-3 and 42 U.S.C. § 2000e, *et seq*, the First and Fourteenth Amendments to the United

States Constitution, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq., and

Article I, §§ 2, 3, & 4 of the Illinois Constitution.

58.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343,

and 1367.

59.      This Court has jurisdiction over this action because Plaintiff is seeking

protection of her individual due process, religious freedom and other fundamental rights.

*Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981).

60.      Plaintiff timely filed a claim with the Equal Employment Opportunity

Commission and received her Right to Sue letter on June 10, 2022.

61.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

62.      This Court is authorized to grant declaratory judgment under the Declaratory

Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil

Procedure.

63.      This Court is authorized to grant Plaintiff's prayer for relief regarding damages,

costs, and attorney's fees, pursuant to Rule 54 of the Federal Rules of Civil Procedure and Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §1981a and §2000e, *et seq*., the Illinois Religious

Freedom Restoration Act, 775 ILCS 35/20, and the Illinois Civil Rights Act of 2003, 740 ILCS

23/5.

## RELEVANT LEGAL AUTHORITY

64.     The State has "important and legitimate interests in . . . protecting the health of the pregnant woman and in protecting the potentiality of human life." *June Medical Services L.L.C. v. Russo*, 591 U.S. ___ (2020) (Roberts, J., concurring) (citing *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 875-876 (1992) (plurality opinion)

65.     The State has an interest in protecting the life of the unborn. *Casey*, 505 U.S. at 873.

66.     As a matter of public policy, "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891).

67.     As a matter of public policy, the right to bodily self-determination is recognized as constitutionally protected by the right to privacy. See, *Eisenstat v. Baird*, 405 U.S. 438, 453 (1972). See also, *Olmstead v. U.S.*, 277 US 438, 478 (1928) (Brandeis, J., dissenting) (the right to have one's private life protected from government interference is described as "the right to be let alone-the most comprehensive of rights and the right most valued by civilized man.")

68.     "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).

69.     "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate." 42 U.S.C. §2000e-5(g).

70.     "[S]ubject to the provisions of this section, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use." 21 U.S.C. §360bbb-3(a)(1) (the "Emergency Use Authorization Statute," or "EUA Statute.")

71.     As part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, the statute mandates that all individuals to whom the product approved for Emergency Use may be administered, be given the option to accept or refuse administration of the product. Specifically:

72.     "With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following . . . Appropriate conditions designed to ensure that individuals to whom the product is administered are informed — (I) that the Secretary has authorized the emergency us of the product; (II) of the significant known potential benefits and

risks of such use, and of the extent to which such benefits are unknown; and (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.  21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).

73.     The primary policy furthered by the Illinois Healthcare Right of Conscience Act, amended by Public Act 102-667, is "to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care …" 745 ILCS 70/2.

74.     Under the HCRCA's underlying definition, "health care" is defined as "any phase of patient care, including but not limited to, testing, diagnosis, prognosis, ancillary research, instructions, family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures, medication, or surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional and mental wellbeing of persons." 745 ILCS 70/3.

75.     "Conscience" is defined in the HCRCA as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." *Id.*

76.     The HCRCA as written is unambiguous, and unequivocally applies to protect individuals such as Plaintiffs from unlawful vaccination or testing mandates, or any forced participation in medical procedures which violate their sincerely held religious beliefs. 745 ILCS 70/5, in particular, provides,

> Sec. 5. Discrimination. It shall be unlawful for **any** person, public or private institution, or public official to discriminate against **any** person

in **any** manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or **any** other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in **any** way in **any** particular form of health care services contrary to his or her conscience.

745 ILCS 70/5 (Source: P.A. 90-246, eff. 1-1-98.) (Emphasis added.)

77.     When Public Act 102-667 was enacted on or about November 8, 2021, it added a

new Section 13.5 to the HCRCA. The new Section 13.5 provides,

> It is not a violation of this Act for any person or public official, or for any public or private association, agency, corporation, entity, institution, or employer, to take any measures or impose any requirements, including, but not limited to, any measures or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations. It is not a violation of this Act to enforce such measures or requirements. This Section is a declaration of existing law and shall not be construed as a new enactment. Accordingly, this Section shall apply to all actions commenced or pending on or after the effective date of this amendatory Act of the 102nd General Assembly. Nothing in this Section is intended to affect any right or remedy under federal law. (Source: P.A. 102-667, eff. 6-1-22.)

78.     The Amendment purports to "declare" that the law means and always meant to

exclude Covid-19 from its protection of individual rights. 745 ILCS 70/13.5.

79.     The assertion is that lawmakers in the 1970s and 1990s somehow wrote HCRCA

fully intending to exempt Covid-19, a virus which was then unheard-of, from its provisions. It

also begs the question why, if lawmakers in the 1970s and 1990s were prescient enough to exempt

Covid-19 from the requirements of HRCA, they did not see fit to exclude ebola, H1N1, measles,

smallpox, or even influenza (for which a separate vaccine statute does actually exist – and which

recognizes the exemption for religious objection within its provisions, see 210 ILCS 85/6).

80.     The Amendment contradicts the stated public policy of the HCRCA which is to

honor the sincerely held religious beliefs of every Illinois citizen. 745 ILCS 70/2. It conditions

the conscience protection for Plaintiff's sincerely held religious conviction, found elsewhere in

§§ 4, 5, 7, 8, 9, 10, and 11 of the HCRCA, upon their compliance with any and all "measures and

requirements" an employer might see fit to impose in the alleged attempt to combat, specifically,

Covid-19 or any of its "subsequent iterations." PA 102-667, Section 5.

81.     Plaintiff has suffered the loss of her constitutionally and statutorily guaranteed

rights of free exercise of religion and equal protection, because of the Defendant's actions.

82.     Additionally, Plaintiff has suffered a chilling effect on the exercise of her rights as

a result of the Defendants' actions.

83.     The Amendment, and the enforcement of a Covid-19 vaccination or testing

program, are actions taken under color of state law.

84.     Defendant's actions have imposed irreparable harm to Plaintiff's free exercise of

religion.

85.     The Illinois Department of Public Health Act sets forth explicit due process

procedures that must be followed when attempting to institute mandated vaccinations and/or

testing.

86.     Pursuant to the Act, any person subject to testing under paragraph 2(d) shall be

provided written notice from the IDPH that includes the following information:

> i.  that the individual <u>may refuse to consent</u> to physical examination, test, or
> collection of laboratory specimens; (ii) that if the individual consents to
> testing, the results of that testing specimens may subject the individual to
> isolation or quarantine pursuant to the provisions of subsection (c) of this
> Section; (iii) that if the individual refuses to consent to physical examination,
> tests, or collection of laboratory specimens and that refusal results in
> uncertainty regarding whether he or she has been exposed to or is infected
> with a dangerously contagious or infectious disease or otherwise poses a
> danger to the public's health, the individual may be subject to isolation or
> quarantine <u>pursuant to the provisions of subsection (c)</u> of this Section; and (iv)

that if the individual refuses to consent to physical examinations, tests, or collection of laboratory specimens and becomes subject to isolation and quarantine as provided in this subsection (d), he or she shall have the right to counsel pursuant to the provisions of subsection (c) of this Section.

87.     Pursuant to the Act, any person that is subject to vaccination shall be provided written notice from the IDPH that includes the following:

i.     that the individual may refuse to consent to vaccines, medications, or other treatments; (ii) that if the individual refuses to receive vaccines, medications, or other treatments, the individual may be subject to isolation or quarantine pursuant to the provisions of subsection (c) of this Section; and (iii) that if the individual refuses to receive vaccines, medications, or other treatments and becomes subject to isolation or quarantine as provided in this subsection (e), he or she shall have the right to counsel pursuant to the provisions of subsection (c) of this Section.

88.     That Department of Public Health Act further admonishes that the religious beliefs of individuals must be honored at all times in the administration of vaccinations.

89.     Governor Pritzker's authority relative to emergency authority is clearly spelled out in the provisions of the IEMAA.  The Executive Orders issued by Governor Pritzker lack any historical precedent despite numerous other pandemics that have faced this State since the implementation of the IDPHA.  The Executive Orders violate the mandated due process procedures set forth in the IDPHA that are afforded all citizens of the State of Illinois.

90.     Further, pursuant to the provisions of the IEMAA, Governor Pritzker is not provided independent authority to make decisions relative to public health related matters without coordination from the IDPH.

91.     It is telling that when the Illinois Legislature passed the Department of Public Health Act pursuant to its constitutional authority, they did not even grant the DPH with authority to mandate vaccinations on the general public without consent, but merely gave them authority

to quarantine individuals that would not consent if appropriate promulgated procedures sets forth in subsection (c) could be satisfied.

92.    Such consent was clearly important in the passing of such legislation with the understanding a vaccination is not something that can be undone at the end of the day.

## COUNT I
## DEFENDANT'S COVID-19 VACCINATION OR TESTING PROGRAM
## VIOLATES TITLE VII, 42 U.S.C. § 2000e, et seq.

93.    Plaintiff restates and incorporates by reference Paragraphs 1 through 92 as though fully set forth herein.

94.    Plaintiff has a right to insist she not be compelled to be vaccinated or to submit to testing for Covid-19 unless the same be authorized by law.

95.    Defendant relied upon an executive order of the Governor as authority which compelled them to require Plaintiff to be vaccinated or subject herself to invasive testing for Covid-19.

96.    Title VII of the Civil Rights Act of 1964 prohibits Defendant from discriminating against Plaintiff on the basis of her sincerely held religious beliefs.

97.    Plaintiff holds sincere religious beliefs that preclude her from receiving a Covid-19 vaccine.

98.    Plaintiff informed Defendant of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

99.    Defendant acknowledged Plaintiff's right to have her sincerely held religious beliefs protected, in that Defendant initially honored, in writing, Plaintiff's religious exemption from Covid-19 vaccination and testing.

100.     Nonetheless, the Defendant then, under color of law, adopted policies which mandated Plaintiff to become vaccinated or submit to invasive testing.

101.     Defendant, then, revoked and failed to provide Plaintiff with religious exemption and reasonable accommodations, thereby discriminating against Plaintiff because of her religious beliefs.

102.     Defendant's failure to provide religious exemptions and accommodations has harmed and will continue to harm Plaintiff.

103.     Plaintiff filed charges with the EEOC complaining of these discriminatory actions. Plaintiffs received her Right to Sue Letter on June 10, 2022.

104.     An actual controversy exists between the parties in regard to the lawful authority of the Defendant to compel the Plaintiff to submit to vaccination or testing for the COVID-19 to allegedly prevent the spread of an infectious disease.

105.     An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

Wherefore, Plaintiff, AMANDA JACKSON, respectfully prays for relief against Defendant as set forth in her Prayer for Relief.

### COUNT II
### DEFENDANT'S COVID-19 VACCINATION OR TESTING PROGRAM VIOLATES THE EMERGENCY USE AUTHORIZATION ACT, 21 U.S.C. §360BBB-3, et seq.

106.     Plaintiff restates and incorporates by reference Paragraphs 1 through 92 as though fully set forth herein.

107.     On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech

COVID-19 Vaccine, not the fully approved COMIRNATY.

108.     There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

109.     In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

110.     Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (Id.).

111.     Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine. (See Pfizer Letter at 6 ("There is no adequate, approved, and available alternative to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

112.     Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated for use.

113.     The Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

114.     By imposing a Mandatory COVID-19 Vaccination Policy on Plaintiff and refusing to grant Plaintiff her religious exemption from such mandatory vaccination, Defendant denied Plaintiff her right to accept or refuse administration of the three currently available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use

Authorization statute.

115.    Defendant violated the provisions of the Emergency Use Authorization Statute.

116.    Defendant denied Plaintiff her statutory rights under the United States Code and infringed upon the explicit protections outlined in the Emergency Use Authorization Statute.

117.    The vaccinations have been authorized for less than one year.

118.    The long-term effects for this vaccine are unknown.

119.    Pfizer has acknowledged over 1200 known side effects from its "investigational Covid-19 vaccine."

120.    An actual controversy exists between the parties in regard to the lawful authority of the Defendant to compel Plaintiff to submit to health care services which are subject only to Emergency Use approval, in violation of Plaintiff's moral conscience.

121.    An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

122.    Defendant's Policy has caused Plaintiff harm by denying her statutory right to accept or refuse administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

Wherefore, Plaintiff, AMANDA JACKSON, respectfully prays for relief against Defendant as set forth in her Prayer for Relief.

## COUNT III
## VIOLATION OF THE DUE PROCESS RIGHTS SET FORTH
## IN THE ILLINOIS DEPARTMENT OF PUBLIC HEALTH ACT

123.    Plaintiff restates and incorporates by reference paragraph 1 through 92 as though fully set forth herein.

124.     The legislative procedural safeguards set forth in the Illinois Department of Public Health Act must be followed when mandating testing and vaccinations on people to control the spread of disease.

125.     Due process requires the following before any individual can be required to undergo vaccination, testing, or quarantine for any infectious disease: acquire consent; proceed to a court hearing; appointment counsel if desired; and a lawful order of quarantine.  Associated with any such court order, the public health department must prove to this Court, be clear and convincing evidence, the individual was exposed to or may have been exposed to a contagious disease prior to being able to mandate any testing and/or vaccination on public citizens.

126.     Defendant is not the governing body known as the Public Health Department, thus is not granted the statutory authority to mandate vaccinations and/or testing on public citizens without coordination from the health department.

127.     Should the County Health Department desire Plaintiff, or any other individual, to vaccinate and/or test, this can only be accomplished by following the procedural and substantive due process requirements set forth in 20 ILCS 2305/2, as well as 77 Ill. Admin. Code 690 *et seq.*

128.     Requiring Plaintiff to participate in Covid-19 vaccination or testing in violation of State law is not the least restrictive means of furthering any State interest.

Wherefore, Plaintiff, AMANDA JACKSON, respectfully prays for relief against Defendant as set forth in her Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

     A.    That this Court render a Declaratory Judgment declaring that Defendant's Mandatory COVID-19 Vaccination Policy, both on its face and as applied by Defendant, is illegal and unlawful under the Emergency Use Authorization statute, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) and Title VII, 42 U.S.C. § 2000e, et seq. and further declaring that:

     a.  by terminating Plaintiff from employment with Defendant, Defendant has unlawfully denied Plaintiff her statutory rights under the Emergency Use Authorization statute to refuse administration of a product granted only Emergency Use Authorization; and

     b.  by terminating Plaintiff from employment with Defendant, Defendant has unlawfully discriminated against Plaintiff on account of her sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Title VII.

     B.  That the Court render a Declaratory Judgment, adjudging and declaring that Governor Pritzker's Executive Orders, and Defendant's mandatory Covid-19 vaccination or testing policy, violate the Illinois Department of Public Health Act, and the Illinois Healthcare Right of Conscience Act, and further declaring that:

     a.  By terminating Plaintiff from employment with Defendant, Defendant has unlawfully denied Plaintiff her statutory rights under the Illinois Department of Public Health Act to refuse administration of a vaccine and medical testing; and

     b.  By terminating Plaintiff from employment with Defendant, Defendant has unlawfully discriminated against Plaintiff on account of her sincerely held religious

objections to receiving or accepting one of the three COVID-19 vaccines in violation of the HRCRA.

C.     That this Court award Plaintiff actual damages in an amount to be proven at trial (but not less than $300,000, as provided by 42 U.S.C. §1981a(a) and (b), or $2,500 per violation, as provided by 745 ILCS 70/12), including those for pain and suffering, that Plaintiff sustained as a result of Defendant's discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

D.     That this Court adjudge, decree, and declare the right and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

E.     That this Court retain jurisdiction over the matter for purposes of enforcing the Court's order.

F.     That this Court award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Title VII of the Civil Rights Act, and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

G.     That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

By:    /s/ Bethany D. Hager
       Bethany D. Hager
       IL Bar Reg. No. 6301697
       Law Office of Bethany D. Hager
       917 North Walnut Street
       Danville, IL 61832
       Telephone: 217-497-1009
       bhagerlaw@gmail.com

## VERIFICATION

I, AMANDA JACKSON, am over the age of eighteen years and am an adult individual named as Plaintiff in the above-captioned matter. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: September 1, 2022            By:        /s/ Amanda Jackson
                                              AMANDA JACKSON